FILED
2020 Mar-04 PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| ABBIEGEAL BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:19-cv-00013-LSC |
| | ) | |
| DIVERSIFIED CONSULTANTS INC. *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Abbiegeal Bailey brings the present action on behalf of herself and all others similarly situated, alleging that Defendants, Pinnacle Credit Services, LLC ("Pinnacle") and Diversified Consultants, Inc. ("DCI") (collectively "Defendants"), violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, through a debt collection letter she received from Defendant DCI on behalf of Defendant Pinnacle. Before the Court is Defendants' Motion to Compel Arbitration and Stay Proceedings. (Doc. 23.) For the reasons set forth below, Defendants' motion is due to be granted.

## I. Background

On October 10, 2007, Plaintiff opened an account with Verizon subject to the Verizon Wireless Customer Agreement Terms & Conditions ("Customer Agreement"). According to Erica Wooley, a Consultant for Billing Solutions for Verizon, Plaintiff accepted the Customer Agreement when she accepted services through Verizon and utilized Verizon's services from October 10, 2007, to February 24, 2012. (Doc. 23 Wooley Decl. at 2.)

The Customer Agreement includes an arbitration provision. The first page of the Customer Agreement notes: "By accepting this agreement, you're bound by its conditions. It covers important topics such as . . . settlement of disputes by arbitration instead of in court." (Doc. 23 Ex. A at 1.) In a later section entitled "Dispute Resolution and Mandatory Arbitration," the Custom Agreement states the following:

> WE EACH AGREE TO SETTLE DISPUTES (EXCEPT CERTAIN SMALL CLAIMS) ONLY BY ARBITRATION. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND REVIEW IS LIMITED, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME LIMITATIONS IN THIS AGREEMENT, AS A COURT WOULD. IF AN APPLICABLE STATUTE PROVIDES FOR AN AWARD OF ATTORNEY'S FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO EACH AGREE, TO THE FULLEST EXTENT

PERMITTED BY LAW, THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR QUALIFYING SMALL CLAIMS COURT CASES, ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB").

(*Id.* at 6.)

The Customer Agreement permitted Verizon to "assign all or part of this agreement or your debts to us without notice." (*Id.* at 7.) On June 18, 2014, Verizon sold all right, title, and interest in Plaintiff's account and the Customer Agreement to Defendant Pinnacle. (Doc. 23 Wooley Decl. at 2.)[1]

## II. Standard

In ruling on a motion to compel arbitration, this Court applies a standard similar to review of a motion for summary judgment. *See In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary

---

[1] Plaintiff does not expressly stipulate to the existence of an arbitration agreement between herself and Verizon. She notes, only in passing, that "[a]lthough Plaintiff never actually signed the Agreement, Defendant alleges that Plaintiff entered into the Arbitration Agreement when she accepted and utilized Verizon's services." (Doc. 27 at 2–3.) However, Plaintiff has presented no argument or evidence to rebut Defendants' evidence that such an agreement existed between Plaintiff and Verizon.

disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate" (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The parties appear to agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs any arbitration agreement between them. "The FAA makes enforceable a written arbitration provision in 'a contract evidencing a transaction involving commerce.'" *Jenkins v. First. Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (quoting 9 U.S.C. § 2). It promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses*

*H. Cone Mem'l v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

III. **Discussion**

**A. Existence of an Arbitration Agreement Between the Parties**

"[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (quoting *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011)). "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Absent such an agreement, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).

As previously noted, there is no genuine dispute as to whether Plaintiff entered into an arbitration agreement with Verizon. Defendants have presented unrebutted evidence indicating that Plaintiff accepted the terms Verizon's Customer Agreement, including its arbitration provision, when she accepted and utilized Verizon's services. The Customer Agreement expressly permitted Verizon to

"assign all or part of this agreement . . . without notice." (Doc. 23 Ex. A at 7.) Defendants have not provided the Court with any Bill of Sale regarding the assignment of rights under the Customer Agreement by Verizon. However, they have presented a declaration from a Verizon official representing that "[o]n June 18, 2014, Verizon sold all right, title, and interest in [Plaintiff's] account and the Customer Agreement to Pinnacle Credit Services, LLC." (Doc. 23 Wooley's Decl. at 2.)

Plaintiff disputes that Verizon assigned the right to invoke arbitration to Defendants on June 18, 2014. On the contrary, she asserts that Defendants' attached exhibits "only support a position through affidavit that Verizon sold [her] *account* to Pinnacle Credit Services, LLC." (Doc. 27 at 4) (emphasis added). Plaintiff relies on *Lance v. Midland Credit Mgmt.*, 375 F. Supp. 3d 604 (E.D. Pa. 2019), for the proposition that the assignment of rights to an account does not necessarily convey the right to demand arbitration. In *Lance*, a Bill of Sale confirmed the assignment of the plaintiff's "Account" to the defendant, but the defendant produced no documents from which the court could define "Account." *Id.* at 613–14. As a result, the court could not find that the word "Account" in the Bill of Sale "automatically include[d] all 'rights and duties' under the Agreement," and it therefore denied the

defendant's motion to compel arbitration.[2] Relying on *Lance*, Plaintiff argues that "the current acquisition rights are unclear" and that Defendants have thus failed to meet their burden of proving the existence of a valid arbitration agreement between the parties. (Doc. 27 at 5.)

Contrary to Plaintiff's assertions, the language of the attached declaration of Erica Wooley makes clear that Defendant Pinnacle has been assigned the right to invoke arbitration. Her declaration states that Defendant Pinnacle received "all right, title, and interest in [Plaintiff's] account *and the Customer Agreement*." (Doc. 23 Wooley's Decl. at 2) (emphasis added). As noted above, the Customer Agreement contains the arbitration provision at issue in the instant case. Based on the language of Wooley's declaration, the assignment of rights from Verizon to Defendant Pinnacle is sufficiently broad to include the whole Customer Agreement, including its arbitration provision. Thus, the facts of *Lance*—where the evidence did not clearly show an assignment of arbitration rights—are inapposite here. Despite the absence of the Bill of Sale, the evidence indicates that Defendant Pinnacle is the

---

[2] Notably, the same court granted the defendant's Renewed Motion to Compel Arbitration two months later, after the defendant debt collector "presented its purchase agreement evidencing its purchase of all right to the account, including the right to arbitration." *Lance v. Midland Credit Mgmt., Inc.*, No. 18-4933, 2019 WL 2143362, at *1 (E.D. Pa. May 16, 2019).

assignee of Verizon's arbitration rights.

Defendants have not presented evidence that Defendant DCI is an assignee of the Customer Agreement, but Defendant DCI may still benefit from its provisions as Defendant Pinnacle's agent. The Customer Agreement states that it "isn't for the benefit of any third party except our parents, affiliates, subsidiaries, *agents*, and predecessors and successors in interest." (Doc. 23 Ex. A at 7) (emphasis added). Plaintiff does not dispute that Defendant DCI acted as Defendant Pinnacle's agent when it contacted her about her debts. As a result, the assignment of arbitration rights to Defendant Pinnacle also permits Defendant DCI to compel arbitration of Plaintiff's claims in this action.

Accordingly, the Court finds that an arbitration agreement exists between Plaintiff and Defendants.

## B. Scope of the Arbitration Agreement

The Customer Agreement states that "any controversy arising out of or relating to [the Customer Agreement]" shall be settled through arbitration. (Doc. 23 Ex. A at 7.) Plaintiff argues that her FDCPA claims fall outside the scope of this arbitration provision. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v.*

*Randolph*, 531 U.S. 79, 91 (2000). Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

The Supreme Court has held that an arbitration provision covering claims and controversy "arising out of or relating to" an agreement is a "broad arbitration clause." *Id.* at 5. Furthermore, district courts have found the scope of arbitration to be broad when analyzing Verizon agreements identical or substantially similar to the language in this case. Those courts have generally concluded that such language is broad enough to cover most claims, including claims arising out of violations of consumer protection laws. *Magno v. Experian Info. Sols., Inc.*, No. C17-5478, 2018 WL 2984979, at *2 (W.D. Wash. June 14, 2018) (finding that a dispute concerning allegedly improper credit reporting following the plaintiff's cancellation of a renewal contract "plainly arises out of" the Verizon Customer Agreement that the plaintiff had accepted through use); *Asa v. Verizon Commc'ns, Inc.*, No.: 1:17-cv-256, 2017 WL 5894543, at *3 (E.D. Tenn. Nov. 29, 2017) (finding that the "expansive language" allowed the court to "easily conclude" that a plaintiff's claim under the Tennessee Consumer Protection Act arose from the "equipment, products, and services" he received from Verizon).

Conceding that the arbitration clause's language is broad, Plaintiff argues that its scope does not extend to claims alleging debt collection practices under the FDCPA. In support of this proposition, she relies on the reasoning in *Bazemore v. Jefferson Capital Sys., LLC*, No. CV 314-115, 2015 WL 2220057 (S.D. Ga. May 11, 2015). In *Bazemore*, the court found that an arbitration agreement that covered any claim or controversy arising out of a credit card account did not mandate arbitration of the plaintiff's FDCPA claims. *Id.* at *2, *7. The court noted that, under the FAA, the court would otherwise "broadly read the delegation clause, with its use of the terms 'arising from' and 'relating to' [the plaintiff's] account, to favor arbitration." *Id.* at *7. However, the court reasoned that it must balance the federal policy in favor of arbitration with the "federal interest in its consumer advocacy laws, the principal purpose of which is to protect consumers from unfair, abusive and deceptive debt collection practices." *Id.* The court further reasoned that a consumer cannot "sign away her right to seek relief in federal court under consumer protection laws absent a clear and unmistakable intent to do so." *Id.* Because such an intent was not clear even in the broad language of the arbitration clause in that case, the court concluded that the plaintiff's FDCPA claims fell outside the scope of arbitration. *Id.*

The Court finds the reasoning of *Bazemore* unpersuasive in this case. Notably,

the court there cited no authority to support the proposition that the federal policy in favor of arbitration could give way to a conflicting policy in favor of consumer advocacy. If such authority exists, it is likely inconsistent with the Supreme Court's holding in *Randolph*. 531 U.S. at 79. There, the Supreme Court noted that "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the statute serves its functions." *Id.* at 90. (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). Thus, this Court need only consider whether the "important social policies" of the FDCPA could be effectively vindicated in arbitration. Plaintiff has presented no evidence that arbitration would hinder the FDCPA's protections in this case. As a result, Plaintiff's reliance on *Bazemore* is misplaced.

More persuasive is the holding in *Raynor v. Verizon Wireless (VAW), LLC*, No. 15-5914, 2016 WL 1626020 (D.N.J. Apr. 25, 2016). In *Raynor*, a plaintiff brought a claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, asserting that Verizon's debt collection practices violated the act. *Id.* at *1. The plaintiff argued that her claim fell outside of an arbitration clause which used language substantially similar to the agreement in this case. *Id.* at *2. The court

disagreed, reasoning that "although the current suit concerns [Verizon's] alleged debt collection practices, [Verizon's] attempts to contact Plaintiff arose out of Plaintiff's use of [Verizon's] services and the outstanding payments on her bills, which Plaintiff was contractually obligated to make." *Id.* at *5. The findings in *Raynor* are instructive in the instant case. To be sure, this case does not involve claims under the TCPA. Nonetheless, Plaintiff has, as in *Raynor*, alleged unlawful debt collection practices relating to Verizon's services and the outstanding payment of Plaintiff's wireless bills. As in *Raynor*, the debt collection practices undertaken by Defendant arise, in part, from Plaintiff's use of Verizon's wireless services pursuant to the Customer Agreement.

Given the broad language of the arbitration provision and the nature of Plaintiff's claims, she has not met her burden of proving that the claims at issue are unsuitable for arbitration. Even if the connection between Plaintiff's FDCPA claims and the Customer Agreement is attenuated, federal policy dictates that any doubt must be decided in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Accordingly, the Court finds that Plaintiff's claims fall within the scope of the arbitration agreement.

## IV. Conclusion

For the reasons stated above, Defendants' Motion to Compel Arbitration and Stay Proceedings (doc. 23) is due to be granted. An Order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on March 4, 2020.

L. Scott Coogler
United States District Judge

199455